**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DANIEL A. ROCHA

Applicant,

v.                                    Case No.: 8:16-cv-523-TPB-SPF

SECRETARY, Department
of Corrections,

Respondent.
_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Daniel A. Rocha applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state convictions for principal to murder in the first-degree and conspiracy to commit aggravated battery.  The Respondent concedes the petition's timeliness.  (Doc. 29 at 12).  Upon consideration of the petition (Doc. 1), Rocha's memorandum (Doc. 3), the response (Doc. 29), and the reply (Doc. 37), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the petition is **DENIED**.

## **Background**[1]

Rocha lived in Texas.  A friend, Allen Blackthorne, asked Rocha to find someone to beat up his ex-wife for $20,000.  Rocha contacted Samuel Gonzalez to do the job.  Rocha provided Gonzalez with the victim's address in San Antonio, Texas, and a photograph of her.  Gonzalez went looking for the victim several times but did not find her.  Gonzalez became disinterested in the job and contacted his cousin, Jose Del Toro, to see if he would do the job for less money.  Del Toro agreed. Knowing that the victim would soon move to Florida, Rocha asked Gonzalez and Del Toro if either would go to Florida to do the job.  Rocha advised that Blackthorne would pay a $10,000 incentive if Blackthorne got his daughter back from the victim. Gonzalez warned that the victim could be beaten badly or die from her injuries.

On November 4, 1997, Gonzalez, Del Toro, and Rocha met at the Pan American Club in Texas.  Rocha discussed having Del Toro go to Sarasota, Florida, to find the victim and beat her.  Rocha offered Del Toro $4000 plus expenses.  When Del Toro asked whether it would be easier for him to just shoot the victim, Rocha responded, "[Y]es, whatever is easier for you, that's what you do, do it the easiest way to get the $10,000."  Rocha provided Del Toro the victim's address in Florida. On November 7, 1997, Del Toro called Gonzalez and told him to relay to Rocha that the job was done.  The victim was shot in the face and stabbed in the neck.  She died from her injuries.  Rocha subsequently paid Gonzalez $3,500 to deliver to Del Toro.

---

[1] The factual summary derives from Rocha's direct appeal brief and the trial transcript. (Doc. 32, Exs. 1c–1f, 5).

Rocha was charged by indictment with murder in the first degree as a principal (Count I) and conspiracy to commit murder in the first degree (Count II). Rocha proceeded to a jury trial and was convicted on Count I as charged and was convicted of a lesser-included offense of conspiracy to commit third degree murder on Count II.   However, neither the oral instructions to the jury nor the written instructions included conspiracy to commit third degree murder as a lesser included offense on Count II.  The verdict form erroneously included this offense as an option for the jury to consider.  Rocha's trial counsel subsequently filed a motion for new trial and argued that the verdict form was improper and that the jury convicted Rocha for a crime on which it was not instructed.  Following a hearing on the motion, the trial judge entered a judgment on Count II for the lesser-included offense of conspiracy to commit aggravated battery.  Rocha serves life imprisonment on Count I and a consecutive sentence of 13.4 months imprisonment on Count II.[2]

The state appellate court affirmed Rocha's convictions and sentences in *per curiam* decisions without a written opinion.   The state courts denied Rocha's numerous motions for post-conviction relief and his petitions for a writ of habeas corpus, his petition for a writ of mandamus, and his petition to invoke all writs jurisdiction.

---

[2] Rocha was originally sentenced to a consecutive term of 13.3 years imprisonment on Count II. He successfully moved to correct an illegal sentence and was sentenced to 13.4 months imprisonment consecutive to the life sentence on Count I. (Doc. 32, Ex. 37a at 246–48, 262–80).

## **Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs Rocha's application. *Wilcox v. Fla. Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998). Section 2254(d), which creates a highly deferential standard for federal

court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State
> court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established
> Federal law, as determined by the Supreme Court of the
> United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power
> of a federal habeas court to grant a state prisoner's
> application for a writ of habeas corpus with respect to
> claims adjudicated on the merits in state court. Under
> § 2254(d)(1), the writ may issue only if one of the
> following two conditions is satisfied—the state-court
> adjudication resulted in a decision that (1) "was contrary
> to . . . clearly established Federal Law, as determined by
> the Supreme Court of the United States" or (2) "involved
> an unreasonable application of . . . clearly established
> Federal law, as determined by the Supreme Court of the
> United States." Under the "contrary to" clause, a federal
> habeas court may grant the writ if the state court arrives
> at a conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case

> differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing
> legal principle from this Court's decisions but
> unreasonably applies that principle to the facts of the
> prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*,

562 U.S. 86, 103 (2011); *see White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical

point is that relief is available under § 2254(d)(1)'s unreasonable application clause

if, and only if, it is so obvious that a clearly established rule applies to a given set of

facts that there could be no 'fairminded disagreement' on the question . . . .")

(quoting *Richter*, 562 U.S. at 103); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And

an 'unreasonable application of' those holdings must be objectively unreasonable,

not merely wrong; even clear error will not suffice.") (quoting *Woodall*, 572 U.S. at

419); *accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the

objective reasonableness, not the correctness *per se*, of the state court decision that

we are to decide."). The phrase "clearly established Federal law" encompasses only

the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state court rulings, which demands that state court decisions be given the benefit of the doubt'. . . .") (citations omitted). When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id*. "[T]he State may rebut the presumption by showing that

the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id*.

In *per curiam* decisions without a written opinion, the state appellate court affirmed Rocha's convictions and sentences. (Doc. 32, Exs. 8, 44). The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002); *see also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state law procedural principles to the contrary."); *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward looking language requires an examination of the state court decision at the time it was made. It follows that the record under review is limited to the record in

existence at that same time, i.e., the record before the state court.

563 U.S. at 181–82.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## I. <u>Due process claim</u>

**Ground One**

Rocha alleges that his sentence on Count II of 13.4 months imprisonment for his conviction for conspiracy to commit aggravated battery violates his federal right to due process for four reasons:  (1) "the sentence does not reflect the jury's actual verdict of conspiracy to commit third degree murder," (2) "the court, not the jury, found each element of the conspiracy to commit aggravated battery," (3) "neither the conspiracy nor the aggravated battery took place within Florida's territorial jurisdiction," and (4) the sentence was for a crime not charged by the grand jury." (Doc. 1 at 5).

At the conclusion of the trial in 1999, the trial judge reduced Rocha's conviction for conspiracy to commit third degree murder to conspiracy to commit aggravated battery and sentenced Rocha to 13.4 years imprisonment for that offense.  In 2014, Rocha filed a Rule 3.800(a) motion to correct an illegal sentence in which he argued that the sentencing guidelines scoresheet erroneously included 120

victim injury points, resulting in a sentence that exceeded the statutory maximum for a third degree felony.  (Doc. 32, Ex. 37, June 2014 motion to correct illegal sentence).  Rocha's motion was granted and he was resentenced on Count II to 13.4 months imprisonment.  (Doc. 32, Ex. 37a, transcript of July 24, 2015, resentencing hearing).  Rocha appealed.  Rocha's appointed counsel filed an *Anders* brief and Rocha filed a *pro se* appellate brief on his own behalf.  (Doc. 32, Exs. 38 and 40).  In his brief, Rocha argued that the new sentence violated both his state and federal rights to due process and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the same claim he now raises in his federal application.  (Doc. 32, Ex. 40 at 7).  The state appellate court struck both appellate counsel's *Anders* brief and Rocha's *pro se* brief and directed the parties to each file a supplemental brief addressing one specific issue under state law.[3]   (Doc. 32, Ex. 41).  Following supplemental briefing, the state appellate court affirmed the new sentence in a *per curiam* decision without a written opinion.  (Doc. 32, Ex. 44).  Rocha's subsequent petition for the writ of certiorari was denied by the United States Supreme Court.

---

[3] The state appellate court directed supplemental briefing on the following issue (Doc. 32, Ex. 40):

> Whether the appellant's conviction for conspiracy to commit aggravated battery must be reversed under *Figueroa v. State*, 84 So. 3d 1158, 1161 (Fla. 2d DCA 2012) ("'A conviction on a charge not made by the indictment or information is a denial of due process[,]' and an indictment or information that 'wholly omits to allege one or more of the essential elements of the crime' cannot support a conviction for that crime. This 'is a defect that can be raised at any time—before trial, after trial, on appeal, or by habeas corpus.'" (quoting *State v. Gray*, 435 So. 2d 816, 818 (Fla. 1983))).

To the extent that Rocha asserts in the federal application the same federal due process claim that he raised in his *pro se* appellate brief in the state court, he cannot obtain relief.  Before a federal court can grant habeas relief, an applicant must exhaust every available state court remedy for challenging his conviction, either on direct appeal or in a state post-conviction motion.  28 U.S.C. § 2254(b)(1)(A), (C).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted)).  To exhaust a claim, an applicant must present the state court with both the particular legal basis for relief and the facts supporting the claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief.  *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The state appellate court struck the brief in which Rocha raised his federal due process claim without reaching the merits.[4]  Rocha cannot return to state court to present the claim in a successive appeal.  *See* Fla. R. App. P. 9.140(b)(3). Accordingly, the claim is procedurally defaulted.  *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1732 (2022) (noting that if a prisoner failed to present a federal claim to the state court and the state court would dismiss the claim based on a procedural failure, the claim is technically exhausted because, in the habeas context, "state-court remedies are . . . 'exhausted' when they are no longer available, regardless of the reason for their unavailability") (quoting *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006)).  A procedural default bars federal habeas relief unless either the cause and prejudice exception or the fundamental miscarriage of justice exception applies. *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).

To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension.  *United States v. Frady*, 456 U.S. 152 (1982).  In other words, an

---

[4] Rocha did not re-assert the federal due process claim in the supplemental appellate brief. (Doc. 32, Ex. 42).

applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Rocha must show constitutional error coupled with "new reliable evidence—whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

Rocha fails to demonstrate either cause or prejudice for the default of his federal due process claim. *See Wright*, 169 F.3d at 703. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *See Schlup*, 513 U.S. at 327. Because Rocha satisfies neither exception to procedural default, the federal due process claim raised in Ground One is procedurally barred from federal review.[5]

---

[5] In his reply, Rocha again asserts that his 13.4-month sentence violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (Doc. 27 at 4–6). Rocha presented his *Apprendi* argument in the *pro se* appellate brief which was stricken by the state appellate court. Consequently, the *Apprendi* claim is procedurally defaulted. Because Rocha satisfies neither the cause and prejudice exception nor the fundamental miscarriage of justice exception, the claim is procedurally barred. Notwithstanding, even if considered on the merits, the claim lacks

## II.   <u>Ineffective assistance of trial counsel claims</u>

In each of Grounds Two through Eight, Rocha presents a claim of ineffective assistance of trial counsel.  Rocha admits that each of the grounds is unexhausted and procedurally defaulted but argues entitlement to federal review under *Martinez v. Ryan*, 566 U.S. 1 (2012).

*Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), regarding claims of ineffective assistance of trial counsel.  *Martinez* holds that "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  566 U.S. at 17.  A claim that lacks merit or is wholly without factual support is not "substantial."  *See id*. at 15–16; *see also Allen v. Sec'y, Dep't of Corr.*, 767 F. App'x 786, 790 (11th Cir. 2019) ("[T]o show that an underlying claim is substantial, the petitioner must show that reasonable jurists would debate

---

merit. *Apprendi* holds that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt."  530 U.S. at 490. Rocha's 13.4 month sentence for the conspiracy to commit aggravated battery conviction did not exceed the statutory maximum and, therefore, *Apprendi* does not apply. *See, e.g., United States v. Sanchez,* 269 F.3d 1250, 1268 (11th Cir. 2001*), abrogated in part on other grounds, U.S. v. Duncan*, 400 F.3d 1297, 1308 (11th Cir. 2005) (holding  that "*Apprendi* has *no effect* on cases in which a defendant's actual sentence falls *within the range* prescribed by the statute for the crime of conviction") (emphasis in original); *United States v. Taylor*, 317 F. App'x 944, 947 (11th Cir. 2009) (finding that there is no *Apprendi* error unless the "actual" or "ultimate" sentence imposed exceeds the statutory maximum.).

its merits.") (citing *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)).

**Grounds Two, Three, Four, Five, Six, and Seven**

In Ground Two, Rocha contends that his trial counsel rendered ineffective assistance by not objecting to the trial judge's "amendment" of the verdict on Count Two from a conviction for conspiracy to commit third degree murder to conspiracy to commit aggravated battery. Rocha alleges that the trial judge's amendment was "unlawful" and that counsel should have objected for four reasons: "(A) the conspiracy to commit third degree murder is a non-existent crime in Florida which required the court to vacate count [two], not reduce it to the conspiracy to commit aggravated battery; (B) the amendment denied the petitioner his right to a trial by jury; (C) neither the conspiracy nor the aggravated battery took place within Florida's territorial jurisdiction; and (D) the conspiracy to commit aggravated battery was not charged by the grand jury." (Doc. 1 at 5–6). Rocha argues that if trial counsel had objected as he suggests, "there is a reasonable probability the court would have . . . dismissed count [two] in its entirety and ordered a new trial as to count [one]."

In Ground Three, Rocha contends that his trial counsel rendered ineffective assistance by not objecting to the State's lack of jurisdiction to arrest, extradite, indict, and prosecute him. Rocha argues that "[t]he object of the Texas conspiracy was changed in the probable cause affidavit to match the Florida crime in order to vest jurisdiction under § 910.005(1)(c)." (Doc. 1 at 6). Rocha alleges that the State

"intentionally indicted [him] as being inside the state in order to avoid § 910.12" and prosecuted him "using a theory that relies upon a conspiracy which took place wholly in Texas." Rocha claims that state law should have prevented the state from prosecuting him, and that if trial counsel had objected to the State's alleged lack of jurisdiction, a reasonable probability exists that he would not have been charged or convicted of any crime in Sarasota, Florida. He further claims that if the trial court had overruled the objection, the issue would have been preserved for appellate review.

In Ground Four, Rocha contends that his trial counsel rendered ineffective assistance by not moving for a judgment of acquittal on the basis that the State "failed to prove the intent element of principal to premeditated murder." (Doc. 1 at 7). Rocha alleges that the State argued at trial that he was liable as a principal to premeditated murder because the murder happened in furtherance of the conspiracy to commit aggravated battery. He argues that "such theory was unlawful and insufficient to prove the intent element of principal to first degree murder because it relieved the State of its burden to prove the intent element." Rocha asserts that the State presented no evidence that he had a conscious intent that Del Toro commit premeditated murder. Rather, the evidence proved only that Rocha hired Del Toro to commit aggravated battery. Rocha contends that if his counsel had moved for a judgment of acquittal, a reasonable probability exists that the trial judge would have granted the motion or, at the least, the issue would have been preserved for appeal.

In Ground Five, Rocha contends that his trial counsel rendered ineffective assistance by not objecting to the State's theory of the case.  Rocha argues that the State relied on the conspiracy to commit aggravated battery as the underlying felony for premeditated murder, but because the elements of that crime "were not set forth in either count of the grand jury's indictment, the state's theory constitutes a constructive amendment of the indictment or a fatal variance between the allegations in the indictment and the proof at tr[ia]l."  (Doc. 1 at 8).  Rocha alleges that this theory "broadened the state's possible bases for conviction beyond what was contained in the indictment."  Rocha alleges that "[t]he State's theory was prejudicial to [him] because his sole defense at trial was that he was only guilty of, at most, conspiracy to commit aggravated battery."  (Doc. 37 at 13).  Rocha further contends that if trial counsel had objected on this basis and moved for a mistrial, a reasonable probability exists that the trial judge would have granted the motion or, if the objection were overruled, the issue would have been preserved for appellate review.  (Doc. 1 at 8).

In Ground Six, Rocha contends that his trial counsel rendered ineffective assistance by not moving for a judgment of acquittal based on insufficient evidence of venue.  He argues that "[v]enue is an element of the charge that must be proved" and that "[i]n this case, the difference between the allegations in the indictment (that petitioner hired and conspired in Florida) and the proof at trial (that petitioner hired and conspired in Texas) constitutes a fatal variance."  (Doc. 1 at 9).

In Ground Seven, Rocha contends that his trial counsel rendered ineffective assistance by not requesting a jury instruction on venue.  He asserts that if counsel had requested the instruction, there is a reasonable probability that the jury would have acquitted him of both charges.  He further asserts that if the request for the instruction was denied, the issue would have been preserved for appeal.

Rocha presented the underlying basis for each claim of ineffective assistance of trial counsel to the state court.  Rocha challenged the trial court's "amendment" of the verdict on Count II in his direct appeal.  (Doc. 32, Ex. 5).  He again challenged the amendment and also challenged the trial court's subject matter jurisdiction, the State's alleged failure to prove the intent element of the charge of principal to premeditated murder, and venue in his state Petition to Invoke All Writs Jurisdiction.[6]  (Doc. 32, Ex. 32).  The state courts denied relief on each claim.  (Doc. 32, Exs. 8, 32).

The gravamen of each of Rocha's claims is that the state court misinterpreted or misapplied state law.  The state court's denial of the substantive claim underlying each of Rocha's ineffective assistance of counsel claims is dispositive of the underlying state law issue and ultimately binds this Court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."); *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1295 (11th Cir. 2017) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291

---

[6] Rocha also raised these claims in his state habeas petitions, which he voluntarily dismissed, and in a Rule 3.850 motion, which the state court denied for procedural reasons without addressing the merits. (Doc. 32, Ex. 21; Ex. 37 at 75).

(11th Cir. 1984) (superseded by statute on other grounds)) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [the Court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law.")).

Moreover, the state court in rejecting each of Rocha's underlying claims has answered the question of what would have happened if counsel had performed as Rocha suggests—the claims would have been denied under state law.  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under state law had [petitioner's counsel] done what [petitioner] argues he should have done . . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law]—the objection would have been overruled . . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Even assuming that trial counsel performed deficiently, Rocha cannot show resulting prejudice because the state court would have rejected each of Rocha's challenges to his convictions.  Because Rocha does not establish that his claims of

ineffective assistance of trial counsel have "some merit," he cannot establish that the claims are "substantial" under *Martinez* to satisfy the cause and prejudice exception to procedural default. *See Clark v. Comm'r, Ala. Dep't of Corr.*, 988 F.3d 1326, 1331 (11th Cir. 2021) (finding that a defaulted claim is substantial under *Martinez* if "reasonable jurists 'would find it debatable whether the petition states a valid claim of the denial of a constitutional right'") (quoting *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269–70 (11th Cir. 2014)). Rocha cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Accordingly, because Rocha satisfies neither exception to procedural default, his claims of ineffective assistance of trial counsel in Grounds Two, Three, Four, Five, Six, and Seven are procedurally barred from federal review.

**Ground Eight**

Rocha contends that his trial counsel rendered ineffective assistance by "failing to object when the trial court adjudicated [him] guilty and imposed sentence without advising him of the state's procedural rules and time limitations governing post-conviction relief, including claims of ineffective assistance of trial counsel." (Doc. 1 at 10–11). Rocha argues that if trial counsel had objected as he suggests, he would have been able to timely pursue "several substantial ineffective assistance of trial counsel claims in state court." He further argues that if counsel's objection had been overruled, the ground would have been preserved for appellate review. The

Respondent argues that this ground is conclusory and fails to state a basis for federal relief.  (Doc. 29 at 31).

Rocha fails to show that this claim of ineffective assistance of counsel is "substantial" under *Martinez*.  The United States Constitution does not require a state court to advise a criminal defendant of post-conviction remedies which may be available to him, and Rocha cites no authority to the contrary.  Trial counsel had no basis to object as Rocha suggests.  Because Rocha fails to show that this ground of ineffective assistance of trial counsel has "some merit," he cannot establish that either ground is "substantial" under *Martinez* to satisfy the cause and prejudice exception to procedural default.  He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Rocha satisfies neither exception to procedural default, Ground Eight is procedurally barred from federal review.

Accordingly, Rocha's petition for the writ of habeas corpus (Doc. 1) is **DENIED**.  The clerk must enter a judgment against Rocha and **CLOSE** this case.

## DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL IN FORMA PAUPERIS

Rocha is not entitled to a certificate of appealability ("COA"). Under Section 2253(c)(1), a prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Rocha must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Rocha is entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Rocha must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 7th day of March, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**